Good morning, and the first is In Re Vehicle Carrier Services Antitrust Litigation, numbers 15-3353, 54, and 55. And we have Messrs. Kilsheimer, Burns, Nelson, and Rivera-Soto. Is that correct? Yes, sir. Welcome. Whenever you're ready. Good morning, Your Honors. I may please the Court, Mr. Kilsheimer, on behalf of the Direct Purchase of Plaintiffs, I have requested two minutes of my time for rebuttal. That's fine. Thank you, Your Honor. As a matter of policy, carriers should be required to file their agreements in order to obtain Clayton Act immunity. The defendants recognized this in connection with their criminal cases when they represented to the government and to the Court that the pendency of the civil actions was a reason why there should be no restitution in the criminal cases. The sentencing judge specifically referenced that provision in not providing restitution to the victims of the conspiracy. Does the failure to file an attorney means that they're subject to lawsuit? Yes, Your Honor, if they are not otherwise exempted by the Shipping Act. Antitrust lawsuits? Yes, Your Honor. I mean, doesn't it mean that you still have to go through the Maritime Commission, even though there is no specific filing? You need to look, Your Honor, at the specific exemption provisions of the Shipping Act, because it's well recognized that such exemptions must be narrowly construed. The exemption is contained in Section 40307 of the Shipping Act. 40307A provides that the antitrust laws do not apply if a carrier has filed an agreement and it has become effective or if the carrier acts with the reasonable basis to believe that it is pursuant to an agreement that has been effective. You also have the Clayton Act bar in D. Yes, Your Honor, I was about to get to that. In 40307D, it says that no person may collect damages or receive injunctive relief under the Clayton Act for, and the term is very particular, conduct prohibited by the Shipping Act. We submit that you need to look at what is conduct prohibited by the Shipping Act. And wasn't it one piece of the conduct prohibited by the Shipping Act is operating under basically unfiled or ineffective agreements that are the type of things that you need to have filed on, like capacity restrictions? Your Honor, I was referring to Section 40102B, which provides in part that a carrier may not operate pursuant to an agreement required to be filed that has not become effective pursuant to Section 40304 or has been rejected, disapproved, or canceled. We submit that that term does not include unfiled agreements because an unfiled agreement can never become effective. And we believe that that interpretation is supported by the reference within that specific provision. You just lost me. I'm sorry. If you don't file it or if you file it and for some reason there's a problem, it's not effective, and if you don't file it, why isn't it not effective? It can never become effective. The term in 40102B is that it has not become effective under 40304. And 40304 refers to what happens to an agreement once it has been filed. And we think that this interpretation makes sense because if that applied to unfiled agreements, you are incentivizing a carrier to not file an anti-competitive agreement. In that instance, they can say there's still all kinds of enforcement activity that can be done at the FMC, is there not? It's possible, Your Honor. Well, first they say, well, if I don't file an agreement, nobody can sue me for Clayton Act liability. I'm free from trouble damages. That's the top level of their argument. But if you take the logic further, an unfiled agreement is not going to be rejected or supervised by the FMC. It may never even be discovered by the FMC. But when it is discovered, they can.  Yes, Your Honor. And they can impose their own regime of penalties. Yes, Your Honor. It is possible. I mean, in this particular case, they did. It was Whistleblower who went into the DOJ leniency program and apparently told them about this conspiracy that the four other defendants have admitted to engaging in for more than 12 years. Pathetically, you have already filed before the FMC, have you not? We did file before the FMC, Your Honor. And after the dismissal in the case in the district court below, the defendants had argued below that that's where we should have gone. After the dismissal, we did in fact file there. The defendants then moved to stay that case, which the motion has granted, but effectively we have been staying. And they announced that they're going to move to dismiss our cases before the FMC. And I believe they're going to oppose any class treatment before the FMC so that the victims of the conspiracy, the admitted conspiracy, are facing the prospect of no recovery whatsoever. But at least one district court opinion suggests that because the FMC follows the Federal Rules of Civil Procedure in many ways, the class action approach may be available. Are you familiar with that? I am, Your Honor. In fact, the FMC did inquire of counsel about that subject, about whether class is available. I believe it was letters that were submitted, but there's been no decision on that. There's been no full briefing on that. And we are effectively subject to the stay. And is the stay because of this case? That was the argument, that we should go to the Third Circuit, whether we could proceed under the antitrust laws or if we were relegated solely to the FMC. Well, the good news is you're here. Thank you, Your Honor. I appreciate that. And I hope we stay here, frankly, Your Honor. With the law and the facts take us, of course. But I want to just make sure that I understand that. Before the district court, as it relates to the Shipping Act claim, there was a concession that the price fixing and the market allocation agreements, quote-unquote, would have fallen within the categories that should have been filed. And you were arguing, if I understood it correctly, that you didn't think the capacity restrictions were subject to the filing requirement? Are you persisting in that position? We are persisting in the position that capacity restrictions are not within the filing requirements under the Shipping Act. It's an alternate grounds for reversal, frankly, Your Honor. The concession was all one sentence in which counsel said we are withdrawing the price fixing and market allocation claims. And that was in the context of the entire argument, which focused on the capacity restriction. But since it's been withdrawn, it helps us focus on what's before us, which is your alternative argument on capacity restrictions not being subject to these agreement filing requirements, correct? Yes. But again, I urge that that is an ultimate basis for reversal. We believe that the initial argument that we make, that unfiled agreements are not entitled to Clayton Act immunity for the policy reasons, for statutory interpretation reasons, for the reasons of narrow construction of antitrust exemptions, for all those reasons, that that is the initial and primary basis for reversal here. If you have, you mentioned 4.0304. Yes, Your Honor. That says that an agreement can never become effective under 4.0304 if it isn't filed in the first place. Is that what it says? 4.0304 describes what happens after an agreement has been filed. It says initially the FMC sends a notice to the Federal Register, but what if it's not filed? 4.0304 doesn't apply. There's no way for 4.0304 to apply because it hasn't been filed. That specifically refers to filing. Going back to 4.0307, under your interpretation, the FMC could impose substantial civil penalties on carriers that continue to operate under an agreement that they filed, but it's no longer effective. But the FMC could not impose such a penalty if the carrier did not even file an agreement. Does that make any sense? The point I'm trying to make, perhaps I'm not articulating it well, is that if it's not filed, the FMC may not ever know about it. It's an unfiled agreement. It's a secret agreement. It's not happened here for many years before the whistleblower came forth, and it may be defended for millions and millions of dollars. But there's a huge incentive to, in fact, file those agreements, isn't there? Because the carrier exposes itself to substantial penalties for not filing. Except, Your Honor, if they're engaging in an anti-competitive agreement. And let's look down at that level. If they're doing that, it is highly unlikely that the FMC is going to accept that and approve that kind of agreement. So by not filing it, they're preserving their anti-competitive conduct. They're making millions of dollars. Under the scenario that they presented here, they're escaping from Clayton Act liability to the victims of their conspiracy. And they go on their happy way. And they do it here for 12 years or more before the whistleblower... You seem to suggest that the incentive is not to file as opposed to filing. There is incentive. In the hopes of not getting caught. Correct, Your Honor. And you're escaping from Clayton Act liability at the same time to the victims of conspiracy. You have filed a complaint with the FMC, have you not? We have, Your Honor. And it must be based on a violation of the Shipping Act. That's right. Is there any activity that could be a violation of the Shipping Act under 40301A that somehow does not constitute conduct prohibited by the Act under D? Potentially there is, Your Honor. We believe that the conduct prohibited language in 40307D refers to specific provisions in the Shipping Act that says a carrier may not do the following, such as 401102B, as we interpret it, 401103, 401104, 401105. Each describe conduct. And it's interesting because the conduct and the activities described in those sections are the way a company may do business. It's the way they conduct their business. But Section 401102, the title is General Prohibitions. That's right. And then B is Operating Contrary to Agreement. A person may not operate under an agreement required to be filed. So it is another prohibition. You've identified other categories of prohibitions, but operating on an agreement that's not filed could not be, it is by definition an ineffective agreement. That is a prohibited act, no? What we're saying is 4102B says you may not operate pursuant to an agreement required to be filed, and that would be under 40302, required to be filed that has not become effective under 40304. And that language, not become effective under 40304, has to refer to a filed agreement. An unfiled agreement can never become effective and is not within the scope of 40304. And that means the carrier cannot operate. Not supposed to operate. Not supposed to operate. Under 40302. Now, let's take an interesting, if I might digress one second. If they filed their agreement here with the FMC and it took 45 days for the FMC to do something, our contention is they would be protected, and they operated pursuant to that before it became effective or before it was rejected. They would be entitled to claim that community under 40307. Indeed, because that was conduct prohibited, operating pursuant to a filed agreement under our interpretation, a filed agreement that has not become effective and has not yet been rejected. Thank you very much. We'll hear from Mr. Bramsevich back in a moment. Thank you very much. Good morning, Your Honors. My name is Warren Bramsevich. I'm here representing all of the indirect purchaser classes in this appeal. Can I just start off with just a basic question? I'm worried that there's a presumption against preemption, federal preemption here, but isn't there a long-standing tradition of states regulating international maritime commerce? And of not regulating, and it's really been traditionally regulated by the federal government. Why is this case any different? I can point to two cases, actually, Your Honor, and the first is United States v. Locke, which the district court referenced in the context of whether to apply the presumption. This case is not United States v. Locke. In U.S. v. Locke, Washington State, following on after the Exxon Valdez oil spill, promulgated a whole host of regulations that affected tanker design, safety requirements on oil tankers, to protect its own waterways. In that case, the Supreme Court said, this is different. These are not state laws of general applicability that apply across the board to all kinds of different activities. These are targeted at an area that the federal government has traditionally regulated. Again, this is not that case. The state laws at issue here are antitrust and consumer protection laws that are laws of general applicability. They apply both within and without the maritime context in this case. But you're seeking to apply them in an area which has been historically recognized as a subject matter for federal supervision. And I think that's what Judge Ambrose's point goes to. And so while those causes of action do reflect traditional police powers, the context in which you're asking them to apply are asking it to basically interfere with something that is uniquely federal, the international maritime activity of the United States. Why isn't that an obstacle to Congress's goal of making sure there's a uniform regime? Two answers to that. First, to the juxtaposition. First, I'll address you to 1 Oak. And 1 Oak, which was the Supreme Court's latest decision on field preemption, but analogous here. In 1 Oak, you had regulations that the federal government had historically heavily regulated in the energy sphere. In that case, the Supreme Court also applied a presumption against preemption to the state laws of general applicability. I think another example is ARC America. In ARC America, the Supreme Court was confronted with the question whether the antitrust laws of the United States should preempt state antitrust laws. The laws, for all intents and purposes, are identical in that context. Again, the Supreme Court applied a presumption against non-preemption and refused to preempt the state laws. The inquiry on that level, as I see those cases, both U.S. v. law, ARC America, 1 Oak, is whether those state laws are passed pursuant to the state's general and historic police powers and are not specifically targeted at federal activity. And that is what you have in this case. Following on that, the general inquiry in conflict preemption cases is quite narrow. It's fact-specific. And it makes sense in that context to narrow the... It seems like you're addressing both presumption against preemption as well as conflict preemption, because the way I see it, you've got a major problem with regard to conflict preemption. I'm happy to address conflict preemption, Your Honor, if you'd like me to address it generally. Yes, please. Certainly. So we do believe a presumption was necessary in this case, and it was important because it established a burden for the appellees to meet in this case that the district court did not hold them to. Turning to conflict preemption, the touchstone here is obviously Congress's intent. In this case, there are two aspects of the inquiry, perhaps three. First, let's focus on the statute itself and its legislative history. You're talking about the Shipping Act? Yes, the Shipping Act. There is no question, there's no argument below, that the Shipping Act makes no reference whatsoever to state law, nor does its legislative history. No express intent or even reference to intent on Congress's part to supplant the state laws. Congress went even further. When Congress defined the antitrust laws in the Shipping Act, it defined it solely in reference to six federal laws. Can we look at the provisions of the Shipping Act and perhaps conclude from an analysis of the provisions that Congress intended to cover this entire field of international shipping? I don't think that's fair, Your Honor. Again, we have to hold Congress to its standard as well. Congress knows how to preempt state law. It knows how to preempt state antitrust laws. At the time the Shipping Act was promulgated, back in 1982, it was amending part of the Federal Aviation Act. You see this in the air cargo case. It knows how to say we are preempting state law. Let's look at what it does say. We have the statute, and I agree with you that the specific antitrust laws identified are all federal. But when you do, because we're allowed to consider, the purpose of the Act, and that's in the first section, is to make sure, and I'm using words that come a little bit from legislative history, but certainly are embodied in the purpose, to put the U.S. shippers on equal footing with their foreign counterparts. To allow state law to apply here seems to interfere with the ability to carry out that goal because the laws that you suggest, and let's focus just on the state antitrust, there's no doubt that when the 1984 Act was put into place, it was done to expand the scope of antitrust immunity. To allow the state antitrust laws then to be used seems to undo that which Congress intended to do when it amended the 1916 Act. If that's wrong, please tell me how that's wrong. Here's how it's wrong, Your Honor. We have to look at conflict preemption within the narrow circumstances of this case. And I'm willing to concede for purposes of this argument that the first argument that we make on the sweep of 40307D, you can assume it's wrong, okay? That federal claims have to be brought before the agency. So what are we left with in that case? Congress hasn't completely done away with the competition regime. Arguably, it's replaced the Sherman and Clayton Act with competition provisions in the Shipping Act. And then, again, under the narrow circumstances of this case, where the appellees have flouted the filing requirements and legal requirements of the Shipping Act, then they are narrowly exposed to state antitrust laws for their unfiled agreements. Again, narrow circumstances. Why are those narrow? And I think this was a concern that the district court had below. And you'll see that the district court raised it in a hypothetical, if you will, on pages 24 and 25 of her order. The district court essentially said, I'm not going to take silence as dispositive in this case. Because if you take a silence as dispositive, a carrier like the appellees could file an agreement. That agreement could be approved. Again, that never happened in this case. But then they could still be subject to criminal and civil enforcement before state. That's simply not going to be the case here. In that sense, it's just like the one-up case where in the context of field preemption, the Supreme Court said, we're going to look at the circumstances of this case and we're going to say there's no field preemption here. But conflict preemption can act as a safeguard to the federal regulatory scheme. And where that would operate in this sense, again, outside the confines of this narrow exception, is if you had a file agreement and you had agency action that exempted the carriers from the antitrust laws, then they have a completely different argument. Then they can say, the federal government has established a regulatory scheme and granted us exemption from their antitrust laws. The state laws in this case would create an obstacle to that federal scheme. But that's not this case. Again, under these narrow circumstances, the state laws and the Shipping Act's competition provisions are not in conflict. There's been no suggestion that they are. They're simply competition regimes that ensure that victims are compensated in this case. To turn to those purposes briefly, the district court was primarily concerned with the impact on the regulatory side of those purposes, a uniform regulatory scheme with minimal government involvement. But in reality, that purpose, first purpose in the Act, depends on filing. And the state laws at issue here, again, in the narrow circumstances presented to the district court, are wholly consistent with that purpose. They further encourage filing. They further expose these carriers to liability under those narrow circumstances if they don't. And as the district court also realized, state laws at issue here fully supported the fourth purpose under the Act, which was to encourage competition exactly for the American carriers that might compete with these folks, to put them on a level playing field. The state laws at issue here, the district court conceded or agreed, support that purpose of the Act. Thank you very much. Thank you, Your Honor. We'll hear from Mr. Nelson. Good morning, Your Honor. My name is Mark Nelson. I'm with the law firm Cleary Gottlieb Steen and Hamilton. I represent Defendant Appellee K-Line. And I speak on behalf of all Defendant Appellees today in regard to the direct purchaser case. On the Shooting Act question, we think the district court got it exactly right. Just a general question. What type of common carrier agreements would not fall within the Act's filing requirements? What kind of agreements? Well, I think agreements between common carriers to restrict competition generally, ongoing cooperative arrangements between them, would fall within the scope of the Shipping Act under 40301A. As I said, I think the district court got the analysis exactly right, and I think the decision below presents a well-reasoned, concise explanation of exactly why the federal claims here had to be dismissed. And plaintiffs tried in their briefs on appeal here to conflate various sections of the Shipping Act and to make it seem more complex than it is. But it's really quite straightforward, as I think some of your questions suggested already this morning. And we start by looking at the plain language of the statute in section 40307D in particular, which says that a person may not recover damages under the Clayton Act or injunctive relief under the Clayton Act for conduct prohibited by this part, meaning the entirety of the Shipping Act. So any conduct that violates the Shipping Act, there is no private cause of action. And I think at this stage it seems plaintiffs are arguing, well, you should read the following obligation into section 40307D. But in order to figure out what's conduct prohibited by the Act, we look, as you suggested, to section 41102B of the Shipping Act. And that part of the statute, which is the general prohibition, says a person may not operate under an agreement required to be filed under sections 40302 and 40303 if the agreement has not become effective under the Act. And so when no filing occurs, when there's an unfiled agreement for an agreement that's required to be filed, it by definition has not become effective and therefore operating under that agreement violates 41102B and constitutes conduct prohibited by the Shipping Act, bringing you within 40307D. The Shipping Act, the construction of the Shipping Act, and the reading of the Shipping Act is really that straightforward. That's exactly how the District Court walked through it. And I think it's also reinforced by the fact that the Federal Maritime Commission has brought enforcement actions for the very same conduct alleged in plaintiff's complaints here. They have reached settlements with various of the defendants for operating under the unfiled agreements that are alleged in the complaints here. And your adversary made a representation that, despite sort of the request that the Federal Court not adjudicate this dispute, and it's going to the Federal Maritime Commission, that there's going to be an application to dismiss that claim. Is it going to be because the FMC lacks the authority to decide it or is it going to be on some other ground? I can assure you that we will not say to the Federal Maritime Commission that these claims should have been brought to the Federal Court. We may have various suggestions. Are you going to suggest that FMC lacks the authority to adjudicate the dispute? You may have other grounds, but are you going to make a point? No, we're not going to suggest that they lack the authority to adjudicate disputes of the type alleged in the complaint. Now, we may challenge standing, and we have some other claims below here in the District Court challenging whether the named plaintiffs are appropriate and whether there is any injury. So we have other defenses, but that will not be one of them. Thanks. Are you addressing the preemption issue, or is that Mr. Rivera-Soto? Am I addressing the wrong side? The preemption issue. The preemption issue. The proper preemption issue, Mr. Rivera-Soto. That's the indirect. So he'll just speak to that momentarily. Thank you. So when you look at the plaintiffs' briefs, what they seem to be doing, in my view, is conflating subsections A and D of 40307. To be clear, subsection A provides full antitrust immunity. That means immunity from criminal prosecution by the Department of Justice and from civil claims, and that's if you file your agreement. Subsection D is the limitations of remedy provision for private causes of action for conduct prohibited by the Act. And Congress very deliberately separated the two. I think the plain language of the statute governs. That's what the district court said. But if you look at the legislative history, they make clear that this was a deliberate decision. And the suggestion, just as an aside, the suggestion that our arguments suggest that we should be able to get off scot-free if we don't file, that there's no incentive to file, I think is simply untrue. There are very powerful incentives to file your agreement here, not least of which is that you avoid criminal liability. You avoid what could be hundreds of millions of dollars in fines. People go to jail for these. And so you have immunity from that. In addition, on the civil side, there's up to double damages before the Federal Maritime Commission. Yes, that's not treble damages as you get in federal court, but the incentives are exactly the same as they would be if antitrust law did apply, with the one exception that we have double damages instead of treble damages. Do you know if there is a history by the Maritime Commission of sanctioning non-filers? Well, they sanctioned us in this very case, so that's very familiar. I'm aware of that history. There have been prior fines imposed. I suppose that's the encouragement to file, and it serves a deterrent purpose. Yes, that's an additional deterrent. So, in fact, you have all the criminal liability fines and jail time that come with an antitrust violation of the Sherman Act. You have civil liability before the FMC up to double damages. And as you point out, the Federal Maritime Commission itself can impose fines and injunctive relief. And, in fact, they have in this very case. And so what plaintiffs, I think, are asking you to do is basically divest the Federal Maritime Commission of jurisdiction because, to be clear, 40307d says that you have no plaintiff claim if there is conduct prohibited by the Shipping Act. So if you find that this is not conduct prohibited by the Shipping Act, that means the FMC has no jurisdiction over these claims. They're not arguing for parallel jurisdiction. You can't have parallel jurisdiction because Congress deliberately set up the statute to avoid parallel jurisdiction. So ruling here that this is not unfiled agreements cannot be conduct prohibited by the Act means that the Federal Maritime Commission cannot hear these claims. And, therefore, the fact that they brought enforcement actions would have been outside of their authority. And plaintiffs, one of the plaintiffs' lead cases where they try to argue for their interpretation of 40307 is United States v. Gosling. And they claim that in their brief, they say, in Gosling, in stark, this is a quote from the plaintiff's brief, in stark contrast to the analysis in Gosling, the district court, meaning in this case, expressly rejected the construction of 40307D that limits antitrust immunity to conduct under agreements filed with the FMC. You said Gosling. I don't think you ever mentioned the Clayton Act bar, did you? No. That was going to be exactly my point. They refer to it as if it's talking about 40307D, but that case is U.S. v. Gosling. It is the government bringing a criminal action against the parties under the Sherman Act. The court never mentions the Clayton Act. They never mention 40307D. That case is brought entirely under 40307A. And, as a result, and, by the way, we have no disagreement that to get the protections of 40307A, we have to file the agreement. The statute says that. And so we don't disagree at all with the ruling in Gosling. We just disagree with the attempt to read it as if it's talking about 40307D when there are no private causes of action at all in that case. So I think the reading is inconsistent with the plain language of the statute. It's inconsistent with the FMC actions, enforcement actions that were brought in this case. And we think it's also, not that you need to go through legislative history because the plain language dictates, but it's also inconsistent with the legislative history in this case. And if you look to the House report from the 1983 bill that we cite to in our briefs and that the district court relied on, I think did not rely on, but cited to, the district court made clear that her ruling was based on a plain language reading, but nonetheless noted that the legislative history was consistent with that plain language reading. But if you look to that report, Congress, in the legislative history, spoke to what to do with unfiled agreements. And the report says that if parties fail to do so, meaning fail to file, then their known conduct undertaken without the benefit of an agreement being filed in effect, so in other words, an unfiled agreement, will subject them to limited antitrust exposure. The antitrust exposure for these so-called secret agreements is limited to injunctive and criminal prosecution by the Attorney General and does not carry with it any private right of action otherwise available under the antitrust laws. That responsibility for private cause of action was given to the Federal Maritime Commission exclusively and deliberately taken away from the courts, and that's crystal clear when you look at the legislative history. Thank you very much. Mr. Rivera-Soto. Thank you, Your Honor. Good morning, and may it please the Court. My name is Roberto Rivera-Soto from the law firm of Ballard Spahr, and I represent the WWL and Marine Corps defendants, but it is my privilege to appear on behalf of all the defendants in response to the appeals filed by the indirect purchaser plaintiffs. Excuse me. One question related to that. There is the newly assembled vehicles service contract exception, and that applies, I guess, to GM and other car manufacturers. How does that differ from the indirect purchaser's proposed use here? Well, the indirect purchaser's claims are not in respect of the newly assembled vehicles, but let me deal with the procedure issue first, and that is that issue was never raised below. That issue did not come up until after Judge Salas had issued her decision. Wasn't there an attempt to raise it during the oral argument, and then when Judge Salas said something that that's news to me, the response was, I guess we won't go there? That's exactly right, and it wasn't, I guess we won't go there. It's, we're not going there. So there's no ruling on the issue? There is no ruling. They did raise it on a motion for reconsideration, and the Court found that there was nothing that was brought forth that satisfied the requirements for reconsideration, and therefore it was not addressed substantively. It really does not belong in this record. But even more so, the newly assembled vehicle requirement is more of a tariff than anything else. It's not in respect of whether an agreement should or should not be filed. So it really, it's putting a square peg in a round hole. I'd like to come back to the question about preemption and the presumption against preemption. Even before that, on the same subject, though, Congress knows how to preempt state laws, as it has done any number of occasions. It explicitly says we are preempting this area of law, but it hasn't done so in this case. No, it didn't, but that is why there is a very robust body of case law that deals with those instances when you're not dealing with express preemption, and that is the implied preemption areas, where the Court will go through an analysis as to whether you have field preemption or whether you have conflict preemption. And even within conflict preemption, you look at two separate categories, whether there's an impossibility of performance or whether the state laws lie as an obstacle to the federal purposes. Would you say that there's a conflict preemption here? I mean, given that the state laws appear to be designed to protect consumers and perhaps enforce antitrust laws, whereas the federal law is intended to regulate maritime shipping, they appear to have different purposes. Yes and no. When you capture it that way, it does seem that way, but the state laws don't exist in a vacuum. They all have to address, when you're saying that there's been a restraint of trade, it has to be in respect of a trade, and here the trade in respect of which the plaintiffs are complaining is the international maritime shipping trade. So how are the state laws that they would like to enforce here obstacles to the goals of Congress through the Shipping Act? You have to go back to the statute itself, and let's look at the Shipping Act. The Shipping Act sets forth a requirement that carriers must file agreements with the FMC. They can file the agreement, the agreement can be effective, and if it is effective, then all of the antitrust immunities then apply. If you file the agreement and it's not effective, or you don't file the agreement, then you receive immunity for civil antitrust claims, but you lose your immunity for criminal antitrust claims. That's exactly what's happened here. In this matter, there are six sets of defendants, five of whom have been indicted and convicted by plea, and have paid hundreds of millions of dollars in fines in actions brought by the United States Department of Justice Antitrust Division. The remaining set of defendants are in negotiations like the other five for their plea agreements. So here we have the question of the criminal part has been taken care of, and we know from Mr. Nelson's argument before that it is clear that unfiled agreements, or what are called secret agreements, were intended to be covered by this statute, and that the legislative history tells us. It's in Niles' report. But my question is, allowing the state law claims to proceed, these are, as Judge Fuentes was saying, aimed at consumer protection, how is enforcing those an obstacle to the goal? Give me the concrete example, if you can. I didn't get as far as I needed to get to answer your question. And that is a part of the statute that no one has seemed to want to talk about here today is that this statute creates a specific forum, a specific cause of action, and a specific set of remedies for anyone who is unrelieved. So Congress has created a place where these people can go, a cause of action, and that's the FMC, a cause of action that they can allege, which is an action for reparations, that's how it's specifically defined in the statute, and a series of remedies. They can get injunctive relief, they can get up to two times damages, and they can get attorney's fees. So although Congress has not said, the Shipping Act of 1984 is intended to express and preempt all state laws, how can you bring an action on a state law in whatever form, and at the same time look at the statute that says, I'm sorry, but those claims have to be brought before the FMC, and they have to be brought in the nature of an action for reparations. But there have to be violations of the Shipping Act, right? Unless you tell me. So would someone bring a New Jersey Consumer Fraud Act before the FMC? If the action, if the core of the New Jersey Consumer Fraud Act claim was an unfiled agreement, then the answer is yes. But would they characterize it as a New Jersey Consumer Fraud claim, or would they have to characterize it as a violation of one of the provisions of the Shipping Act? The latter, Your Honor. It would have to be before the FMC saying, we have an unfiled agreement. The effect is to violate the New Jersey Consumer Fraud Act. But how is allowing a state court claim to proceed in conflict? Is it because you're giving remedies, potentially, that Congress contemplated for this sort of behavior? Well, that is part of it. But the other part of it is that in establishing this Shipping Act in 1984, Congress engaged in a process to comprehensively regulate an area that the court has already recognized is one that is of unique federal concern. So you're talking about the kind of balance that you see in language in Wyeth and those sorts of things where the federal authorities have come up with a unique balance of how to deal with a problem and to allow the state law causes of action to proceed could disrupt that balance. And becomes an obstacle to that balance, and hence, obstacle-conflict preemption. And we know, Your Honors, that when we look at the district court's opinion, that is exactly the focus of the court. It is solely on obstacle-conflict preemption. And the district court went to great pains to point out the various attributes of the Shipping Act that made it unique, in particular, the availability of a forum, a cause of action, and a remedy. Could I ask a question about that motion for reconsideration on the IPP settlement that Judge Salas received? I don't know if you can answer this question, but if I could ask you. I'll try my best. Your adversaries seem to suggest that the district court was expressing herself in a way to suggest she didn't have subject matter jurisdiction and tries to analogize it to a Second Circuit case. What's wrong with that position? Well, the problem with it is that they never put the settlements before the court. There was never a motion before the court to approve these settlements, and they were with two sets of defendants, neither of which were my clients. Apparently, they reached some sort of agreement. Some of us found out about it the day of the argument on the motion. My question doesn't really go to that part of it. It's just there's a challenge to that denial of reconsideration, asserting that the district court made findings that she would deny reconsideration because she lacked jurisdiction. Did you understand that to be her reasoning, or did you understand it that they just didn't satisfy the three requirements for reconsideration? I understood the district court's decision to be not that she lacked jurisdiction. I'm sorry, my time is up. May I answer? Yeah, absolutely. Didn't she lack jurisdiction when she said this case belongs before the Maritime Commission and that's where it should have gone? I think as a practical matter, I think Your Honor is right because the moment the district court said they're dismissed with prejudice, which is what happened here. She already said they belong in the Maritime Commission. They belong elsewhere. I thought that's what she said. That is what she said. So I don't, in more direct response to Your Honor's question, I think what Judge Salas was saying was not that I lack jurisdiction, but that this properly belongs before the FMC. If you want to set a settlement, do it there. And the rationale is important to understand. These are settlements, reportedly, class action settlements. And as you know, it's not like two private parties can say, okay, we decide to settle. The court has a very important, in fact, crucial role in the settlement of class actions. It has to determine that first all the procedural requirements for getting into a settlement are satisfied, and then has to make the substantive determination that it is fair to the class to enter into that settlement. And then only then can the settlement be effected. How can a court that has determined that the matter has been dismissed with prejudice retain that kind of jurisdiction? And the answer is cannot. If there is going to be a settlement, and again, my claim is not part of that, but if there is going to be a settlement, that belongs before the FMC where the rest of this case belongs and where they've already filed their complaints. Thank you, Your Honors. Thank you very much. Mr. Kishheimer. Thank you, Your Honors. Briefly, there's been considerable discussion about the determined effects of the various provisions of the Shipping Act, but the point of fact here is those determinants didn't work. The defendants engaged in an anti-competitive conspiracy for more than 12 years, earned hundreds of millions of dollars as a result, and those determined effects didn't occur here until a whistleblower came along and told the government about this thing. But the question here is, is there a Clayton Act bar that applies to unfiled or so-called secret agreements? Correct, Your Honor. Now, Mr. Nelson, in discussing 40307B, said that any conduct that violates the Shipping Act cannot give rise to Clayton Act liability, but that's not what 40307D. 40307D says that it has to be conduct prohibited by the Shipping Act. And he also said that if we are correct and we are able to proceed under the Clayton Act, isn't not filing an agreement conduct prohibited by the Shipping Act? The specific provision says that all agreements must be filed. It's not that carriers may not do something. It's not conduct prohibited. It's an affirmative, and it's frankly a ministerial-type act. Filing or not filing is a ministerial act. It's not the way a carrier would conduct its business as reflected in the statutes that I cited before, like 41103 and 41104. We're not claiming that if we can proceed under the Clayton Act that the FMC loses all jurisdiction over these defendants. The FMC can proceed under 41103 or 41104. It can proceed and say you should have filed. That is a violation, but it's not conduct prohibited by the Shipping Act. And you need to look at the narrow interpretation that you then give to antitrust exemption provisions. Just briefly, if I may, I'll say my time is up. There was reference to the legislative history. If you're going to look at the legislative history, we think you should look at the legislative history of the act that repeatedly says agreements must be filed. And also there's considerable legislative history about prohibited activity, and those parts of the legislative history refer to the kinds of conduct that's reflected in 41103, 41104, 41105. That part of the legislative history does not refer to 40302, the requirement to file an agreement. I think my time is up. Thank you very much. Thank you, all counsel. Very well presented arguments, and we'll take the matter under advisement.